21770

Ann E. MOULTIS, as Administratrix of the Estate of Carol A. Wludyka, a/k/a Carol A. Moultis, Appellant, v. Dr. Jerome B. DEGEN; Dr. J. A. McFarland; Dr. Robert M. Anderson; Dr. Harvey L. Burnett, Jr.; Dr. J. M. Davis; Mary B. Davis; the South Carolina National Bank and Mary B. Davis as Executors of the Estate of Dr. J. M. Davis; and Dr. Andrew E. Martin, Jr., Respondents.

(301 S. E. (2d) 554)

*James D. Cooper, Jr.,* of *Ratchford, Cooper & Jonas,* Columbia, *for appellant.*

*Charles E. Carpenter, Jr.,* and *Donald V. Richardson, III,* both of *Richardson, Plowden, Grier & Howser,* Columbia, *for respondents.*

*H. Fred Kuhn, Jr.,* of *Moss, Bailey, Dore & Jessee,* Beaufort and *Robert R. Horger,* of *Horger, Horger & Barnwell,* Orangeburg, for *S. C. Trial Lawyers Ass'n, amicus curiae.*

March 24, 1983.

HARWELL, Justice:

This appeal presents the question whether Section 21-15-640, *Code of Laws of South Carolina* (1976), erects a time bar to a tort claim not filed with an estate within five months after first publication of notice to creditors. The trial judge held the statute barred the claim in suit and sustained a demurrer on that ground.

The pertinent portions of § 21-15-640 provide:

All claims of creditors of such estate shall upon the expiration of five months after the first publication of the notice prescribed in § 21-15-630 *be forever* barred unless, before the expiration of such period, an account thereof, duly attested, shall have been filed with such executor or administrator or with the judge of probate of the county

in which such estate is being administered. (Emphasis supplied.)

The language we emphasize was first incorporated into the statutory scheme when the state legislature, in 1943, approved Act No. 177 to amend then Section 8993, *Code of Laws of South Carolina* (1942), so as to, *inter alia,* "Provide for the Barring of Claims Not Filed ... within the Period Therein Provided." 43 Stat. 260 (1943). The amendment accomplished the addition of an entirely new subsection to § 8993 as follows:

> (b) All claims of creditors of such estate shall, upon the expiration of eleven months after the first publication of the notice prescribed in subsection (a), be forever barred unless before the expiration of such period an account thereof, duly attested, shall have been filed with such executor or administrator, or with the Judge of Probate of the county in which such estate is being administered; PROVIDED HOWEVER, that the provisions of this sub-Section (b) shall not apply to obligations secured by mortgages or other liens which have been duly recorded prior to the expiration of such period.

Prior to the adoption of the above subsection, this Court consistently interpreted the statutory scheme as providing personal protection for the estate representative[1] but allowed the creditor to proceed against identifiable assets of the estate which had been distributed. *McNair v. Howle*, 123 S. C. 252, 116 S. E. 279 (1923); *Columbia Theological Seminary v. Arnette*, 168 S. C. 272, 167 S. E. 465 (1932) see also *Muckenfuss v. Marchant*, 105 F. (2d) 469 (4th Cir. 1939). Clearly, until the adoption of § 8993(b) in 1943, "[W]e [had] no statute of nonclaim in this state ...." *McNair v. Howle, supra,* 116 S. E. at 285.

The Attorney General of South Carolina, in a published opinion dated December 23, 1964, traced the legislative history of present § 21-15-640 and concluded: "It is the opinion of

---

[1] Current Section 21-15-650 continues to provide this protection:

§ 21-15-650. No liability if creditor neglects to give statement.

If any creditor shall neglect to give in a statement of his debts within the time aforesaid the executors or administrators shall not be liable to make good the same.

this office that [then] Section 19-474 of the 1962 Code of Laws is a nonclaim statute and accordingly bars claim of creditors not timely filed against the estate." 1964 Op. Att'y Gen., No. 1777, pp. 296, 298.

We agree that the legislature has expressed its intent that this state should have a nonclaim provision. As Professor Karesh noted in 8 S. C. L. Q. 162, if the statute is not a claims-barring statute, it has no meaning. The 1943 Amendment to § 21-15-640 created a category of exemptions to the five-month time limit. The claims which are not barred are "obligations secured by mortgages or other liens which have been duly recorded prior to the expiration of such period." By enacting that amendment, the legislature obviously intended to bar after five months all claims other than those specifically exempted.

Appellant would have us extend judicially this exemption to all tort claims. This is not a judicial but rather a legislative function. Any further exemptions must be legislative determinations. Accordingly, we hold § 21-15-640 is a nonclaim statute which bars all claims which are not timely filed against an estate, its distributed assets and the beneficiaries. To the extent the opinion of the United States Court of Appeals for the Fourth Circuit in *Dubuque Fire & Marine Ins. Co. v. Wilson*, 213 F. (2d) 115 (4th Cir. 1954) interprets our state statute's predecessor to the contrary, it is expressly overruled.[2]

We now turn to the facts of the instant case. Appellant's decedent, Carol A. Wludyka, died on July 9, 1973, following an illness for which she was treated at Richland Memorial Hospital and the South Carolina State Hospital. It appears that shortly thereafter, one of her treating physicians, Dr. J. M. Davis, also passed away.

---

[2] As Judge Blatt cogently pointed out in the case of *Federal Deposit Insurance Corporation v. Fagan*, 459 F. Supp. 933 (D. S. C. 1978), the Fourth Circuit overlooked the 1943 amendment to this statutory scheme. *Ibid.*, at 936. By applying our decisions in *McNair* and *Columbia Theological Seminary* in arriving at its holding that § 8993 (1942 Code, as amended in 1943) did not bar a tardy creditor from proceeding against estate assets in the hands of beneficiaries, that court erred. The late beloved Professor Coleman Karesh made this point in an earlier analysis of the *Dubuque* decision appearing at 8 S. C. L. Q. 162.

Nearly six years later, Appellant Ann E. Moultis, as Administratrix of the estate of Carol A. Wludyka, brought these two causes of action under the wrongful death act and the survival statute against the several treating physicians at both hospitals and the executors of Dr. Davis' estate. The Amended Complaint alleged co-executor Mary B. Davis, the sole beneficiary of the Davis estate, was liable to the extent of any remaining assets of the estate.

The trial judge sustained a demurrer and dismissed the action against respondent Mary B. Davis individually and as the heir and beneficiary of the estate. He reasoned that § 21-15-640 barred the tort claims against estate assets because they were not timely filed.[3] We agree.

Appellant contends this was error because § 21-15-640 "claims of creditors" and a cause of action in tort is not a "claim" nor is she a "creditor" within the meaning of the statute. We disagree. The general rule in this regard is well-stated in an annotation appearing at 22 A. L. R. 3d 488, 496:

> Statutes which by their terms simply require that "any claim" or "all claims" must be presented or filed before an action can be brought thereon have generally been held to apply to claims based on negligence or other tortious acts, although there is authority to the contrary based on a theory that a non-claims statute is intended only to apply to liquidated claims for sums certain.

Further, the term "creditor" has been held sufficiently comprehensive to include those holding claims arising out of tort. 21 C. J. S. *Creditor*, p. 1050. A "creditor . . . may include the owner of any right of action against another, whether a claim or legal right for damages arising out of contract or for a tort." *Coronet Mfg. Corp. v. May Furniture Co.*, 31 Ohio Misc. 131, 282 N. E. (2d) 588 (1971).

---

[3] While we recognize that the claims barring statute is an affirmative defense to be pled by way of answer, and hence is not a ground for a demurrer, *Ellet Bros. v. Manos*, 269 S. C. 581, 239 S. E. (2d) 75 (1977), that issue was not raised in the court below and thus cannot be considered on appeal. *Doremus v. 1. C. L. Railroad Co.*, 242 S. C. 123, 130 S. E. (2d) 370 (1963).

Moreover, we recently held in *Bonsall v. Piggly Wiggly Helms, Inc.*, 275 S. C. 593, 274 S. E. (2d) 298 (1981) that respondent Bonsall's tort claim made her a creditor of appellant Piggly Wiggly even though Bonsall had not filed her claim against appellant when the corporation was dissolved. Therefore, a claim for unliquidated damages may constitute a creditor's claim. Consequently, we affirm the trial court's order holding that § 21-15-640 includes tort claims as well as liquidated claims of creditors.

We have held that § 21-15-640 bars the untimely filing of tort claims but this holding does not apply to undistributed assets discussed hereinafter. Where there are undistributed assets, it is appropriate to petition the Probate Court to reopen the estate in order that after-discovered assets may be accumulated and distributed either under the statute of distribution or under the terms of a will. *Anderson v. Bowers,* 117 F. Supp. 884 (D. S. C. 1954); *McNair v. Howle, supra.*

In the case of *In Re Miles Estate,* 262 N. C. 647, 138 S. E. (2d) 487 (1964), it was held that a liability insurance policy covering negligent actions of the deceased person was an undistributed asset of the estate, even though the administration of the estate had ended. There the court held that under the stated facts, it was appropriate to reopen the estate so that a tort action might be pursued and judgment, if obtained, satisfied by the insurance policy. Also see *Belancsik v. Overlake Memorial Hospital,* 80 Wash. (2d) 111, 492 P. (2d) 219 (1971).

A similar situation was involved in the case of *Williams v. Grossman,* 409 Mich. 67, 293 N. W. (2d) 315 (1980). Therein, the Court said:

We overrule *In re Curzenski Estate* [384 Mich. 334, 183 N. W. (2d) 220]. Although the probate of an estate has been completed and the estate closed, where a person has an action which by statute may be commenced directly against the personal representative of the decedent without first filing a claim against his probate estate,[3] the administration of the estate is "incomplete" within the meaning of the statute and upon petition the estate may be reopened[4] to provide a suable person so that the action

can be commenced. Because the person having the right of action has not filed a claim in the probate proceeding (or, before it was closed, notice of suit pending), recovery of money damages is limited to sources other than assets of the probate estate therefore distributed, e.g., to sources such as the estate's right of indemnification from an insurer or the obligation of the Motor Vehicle Accident Claims Fund[5] to compensate victims of uninsured drivers.[6]

[Footnotes omitted.]

Such a procedure, which we hold appropriate, protects the heirs and/or beneficiaries, and enables them to give good title to properties, and permits an aggrieved plaintiff to pursue the insurance policy and other undistributed assets. No injustice occurs because the insurance company is merely required to afford the protection for which a premium was paid.

No action may be commenced until an estate is reopened and an appropriate Administrator D.B.N. appointed. Appellant's efforts in this case to make the South Carolina National Bank and Mary B. Davis, as executors of the Estate of Dr. J. M. Davis, deceased, parties to this action failed. The trial court dismissed as defendants the Davis estate co-executors because the estate previously had been closed. Appellant did not appeal that order. Because the executors have been discharged, they have no litigating identity. *Cockroft v. Airco*, 276 S. C. 184, 277 S. E. (2d) 587 (1981). To breathe life into the closed Davis estate, the appellant should have petitioned to reopen it. Normally, the respondent should be the discharged executor or administrator, but others might be made respondents, if necessary, for a fair presentation of the issues before the Probate Court.

When and if a Probate Court finds that there are undistributed assets, it would become its duty to reopen the estate. When the undistributed asset is in the form of a liability insurance policy, it becomes the duty of the representative of the reopened estate to advise the insurance carrier of the action such that it might participate in the litigation. The safer practice would be for the Plaintiff to serve the Summons and Complaint not only on the representative of the estate but on the insurance carrier as well. The

insurance company is not to be a named defendant, nor is the fact that there is insurance coverage to be revealed.

Our ruling does not comfort this particular appellant. She never appealed the order which dismissed the Davis estate executors. The six year statute of limitations has now run. Therefore, we affirm the trial court's order but modify it in accordance with today's decision.

Affirmed and modified.

LITTLEJOHN and GREGORY, JJ., concur.

LEWIS, C.J., and NESS, J., dissent.

NESS, Justice (dissenting):

I most emphatically disagree.

The critical issue is whether a cause of action in tort is a creditor's claim within the meaning of the statute. In accord with our previous decisions, I would hold it is not.

In *Wallace v. Timmons,* 232 S. C. 311, 101 S. E. (2d) 844 (1958) this Court stated that S. C. Code Ann. § 19-474 (1956), now codified at § 21-15-640 (1976), refers to "claims of creditors, and relate(s) to *debts* of the testator payable from his estate." (Emphasis added.) This creditor-debtor relationship was most recently recognized in *Southern Coatings & Chemical Co., Inc. v. Belcher,* 274 S. C. 76, 261 S. E. (2d) 162 (1979):

> "... since the debtor is dead —, it becomes essential that the creditor furnish an affidavit showing how the deceased became indebted to him and that the debt had not been paid ..."

The majority does not trouble itself with this Court's decision in *Newman v. Lemmon, et al.,* 149 S. C. 417, 147 S. E. 439 (1929). There, in a wrongful death action on facts strikingly similar to those in the instant case, the Court unequivocally stated a *cause of action in tort is not a debt,* and that a tort claimant, having only a disputed claim, cannot be considered a creditor. See also *Bourne v. Maryland Casualty Co.,* 185 S. C. 1, 192 S. E. 605 (1937), another decision to which the majority turns a blind eye, where we again held a right of action for tort is not a debt.

Authorities in other jurisdictions are in accord with our decisions in *Newman v. Lemmon, supra* and *Bourne v. Maryland Casualty, supra. Frei v. Brownlee,* 56 N. M. 677, 248 P. (2d) 671 (New Mex. — 1962) held that a six months statute did not bar tort claims; *Hancock v. Pyle,* 191 Miss. 546, 3 So. (2d) 851 (Miss. — 1941) held that the six months statute applied only to contractual claims and not to those in tort; *Collins v. Buffner,* 185 Tenn. 290, 206 S. W. (2d) 298 (Tenn. — 1947) held that a "party who has a right of action in tort cannot be deemed a creditor until he obtains a judgment." This holding was affirmed in *Darby v. Union Planters National Bank of Memphis,* 222 Tenn. 417, 436 S. W. (2d) 439 (Tenn. — 1969), holding a party having a right of action in tort against a representative of a deceased cannot be deemed a creditor of the estate until he obtains a judgment.

While I concede there is authority in other jurisdictions to the contrary, the majority can cite no South Carolina authority on point which supports its decision. Aside from the equities, I believe we are bound by the South Carolina precedents.

In reaching its decision here, the majority erroneously relies on *Bonsall v. Piggly Wiggly Helms, Inc.,* 275 S. C. 593, 274 S. E. (2d) 298 (1981), a case not even remotely similar to the one now before us. *Bonsall* involved a corporate dissolution, and we were asked to construe S. C. Code Ann. § 33-21-60(b) (1976), which provides:

> "The corporation shall immediately cause notice of the filing of the statement of intent to dissolve to be mailed to each *known creditor* of the corporation . . ."

We held that where the tort claimant had notified the corporation of her claim and had been contacted about the claim by the store's insurer,the claimant was a known creditor within the meaning of this statute to whom the corporation was required to give notice of dissolution. The intent of the statute was to require corporations to deal fairly with those to whom it has known obligations. Bonsall's claim was known to the corporation, and thus it was required to give her notice of its dissolution. In the present case, the claim might not even accrue, much less be known, until after the time for filing has expired. The statutes are patently dissimilar in their objectives, and any attempted comparison is strained at best.

The majority also cites Judge Blatt's decision in *F.D.I.C. v. Fagan*, 459 F. Supp. 933 (D. S. C. 1978), Professor Karesh's law review article analyzing the *Dubuque* decision, and a 1964 Attorney General's Opinion in support of its position. The *Fagan* case involved a *contract* claim, as did *Dubuque*. These authorities support the position that § 21-15-640 is a nonclaim statute as to *contract* claims, a conclusion with which I do not disagree; however, not one of these authorities expresses an opinion concerning the applicability of the statute to *tort* claims. In fact, Professor Karesh explicitly questioned whether the statute would apply to any contingent liability.

The evil done by the majority today is perhaps best illustrated by example. In this case, the claimant died and the alleged tortfeasor died shortly thereafter. However, a case can easily be imagined in which the tortfeasor dies first, while the claimant lingers for more than five months after the first notice to creditors. In that instance, the majority's decision will bar the wrongful death claim even though it could not have been filed sooner. This decision will deny any remedy to one who has been wronged, while protecting the successors in interest of the wrongdoer.

The majority is apparently concerned that the normal six year statute of limitations will cast a lingering cloud over the estate assets. This concern is baffling, as the claimant may recover only to the extent the assets remain in the hands of the heirs, i.e., the heirs' ability to transfer good title is unhampered. Moreover, if a "cloud" exists, the same "cloud" would have existed over the same assets for the full six years had the tortfeasor lived. Nevertheless, the majority penalizes an injured party simply because the tortfeasor died.

Finally, the majority holds the statute does not apply if the deceased was insured. I am unable to find any language in the statute authorizing this startling conclusion. Either the statute contemplates tort claims in the five-month limitation, or it does not. There is no in-between, and the deceased's decision to insure or not to insure against certain risks should have no bearing on our interpretation of the statute. The majority's "addition" to the statute allowing tort claims to be filed after the expiration of the five-month limitation if the deceased was insured is a gross invasion of legislative prerogative. Additionally, it deprives insurance companies of equal protection, as we have never before held, nor has a statute ever

provided, that a statute of limitations is tolled because the defendant has insurance.

I would hold a cause of action in tort is not a creditor's claim within the meaning of § 21-15-640, vacate the order sustaining the demurrer, and remand the case for trial.

LEWIS, C.J., concurs.